I'm here. I'm not sure why I'm here. I had filed a motion to dismiss Mr. Hernandez-Fuentes' appeal. He's been deported. He has, indeed. If he comes back again and gets caught tomorrow, what happens to him with respect to the issues that are in front of us now? That's after the court issued its order. I took a much deeper look into the case history. And it looks to me like it would be a stretch, but I suppose if you started with Sebring v. New York, where they say there's actually two factors that are exceptions to the rule. Well, the one is you can't get your case heard before the expiration of your sentence. Well, if that's true, typically the cases went off on the collateral consequences issue after that and didn't really address. Let me give you something more specific to go on. All right. As I understand it, he received three years' supervised release from the main charge. That's correct. But that wasn't appealed. And, pardon? That wasn't appealed. I understand that. Just follow me for a second. All right. He received three years' supervised release. That started to run when he was released from prison, correct? September 28th, correct. That's right. September 2005. Now, if his concurrent, if his time had run concurrently, he would have been released from prison earlier and it would be up in September 2007. But because it was consecutive, the three years will be up in September 2008. Now, if he violates supervised release between September 07 and September 08, isn't he in jeopardy? Look, when you look at it that way, he is in jeopardy. He obviously is because he's raising the question of whether or not it should have been concurrent rather than consecutive. Yes. Because the Court found it was okay to do it consecutive, he therefore is in jeopardy an extra year on his supervised release. And if he violates his supervised release between 07 and 08, it does make a difference. And therefore, there's a very important collateral consequence. Now, you made the concession that because it's been served. Now, I want to hear from the government because the government agreed with you. But it just seems to me that there's an entire year where a supervised release where if he violates, it makes a big difference as to whether or not there was concurrent or consecutive session. I agree with that proposition. The problem is the cases tend to say that some sentencing problem in another case isn't sufficient as a collateral consequence, typically. So I'm not arguing against it. I'd certainly like the Court to hear this case. I think it's an important issue after Amlin that we get some of these things dealt with, particularly in some of these contexts. And so ---- What's your position, then? Are you withdrawing your request that this be considered moot? Well, actually, I don't think I need to because it was denied, Your Honor. So ---- Oh, no. It was only denied so we could hear argument. Oh, okay. Well, then ---- How does this case differ from the normal kind of ---- I've forgotten what we call it, and I didn't bother to look it up. I don't get the problem in this case. But the fugitive, if someone who has filed an appeal splits, the appeal is dropped. Right? Right. So how does this differ? I mean, there are certainly collateral consequences to an unresolved appeal. That is, if the person's caught, they're, you know, subject to whatever the penalty was, but we don't typically hear the appeal. And so what's different here? I mean, he happened to have been deported, but the point is he isn't here. He served his sentence. He was convicted on it. There's not a thing we can do about redressing that sentence. It's served and it's over and it's done with. It may have been right, it may have been wrong, but it's a dead duck, isn't it? I tend to agree with that, Judge, except that after the court issued its order, I spent some time looking at how it may be redressed. And I tend to come up with the same answer. I'm not sure it can be redressed. In other words, even if I don't agree that if he came back here, I think that's more in line with the appeals this court has issued in Rivas-Gonzalez, and I think it's Plancharta-Alvarez where the government appealed and this court said it's not moved because they're not getting a benefit from the lawbreaker. Tell me this. I don't know. Maybe one of the other of you. I mean, Judge Wallace's proposition to you is plainly correct. That is, supervised release started to run a year later than it would have if it hadn't been consecutive sentence. And I guess it just doesn't bother me very much that that's true, because I'm not sure how you go and unring the bell. So what would happen? Let's suppose we were to say it's not moved and the sentence was incorrectly made to go consecutive. Then what would happen? Would the probation office, excuse me, the parole board, who does it? The probation office on a PSR? Well, would they then go back and restart the supervised release period a year later, earlier? Well, I said he somehow mystically had been on supervised release for the last year he was in prison. I mean, is that what they would do? I don't know. I'm not sure. I just can't tell. You're asking that this go back so the factors can be explicitly addressed, aren't you?  Well, that was the original. Originally, he wanted out of prison, though. That's always my, that's basically, that was the primary, the primary. And time overcame you. And time overcame us. And I agree. As I started to say, even if he came back, I think the only thing that could happen is if this Court said, yes, these, the Court didn't properly consider mitigation or whatever it might be after Amlin, then, and then all that would happen is he'd get a new, he'd get a, get the relief of having his case say, well, they violated your rights, but it would have no practical effect whatsoever, is the point, really. I guess the atmosphere that slightly concerns me is that he did not split here. No, he didn't. He was thrown out. Right. And so I don't think we necessarily want to abandon him after having thrown him out if there are any consequence to this issue. Well, there, there is a, there is a consequence that I clearly didn't, didn't look at, is that extension of his supervised release, which I, I believe even in Burden, you know, any kind of collateral consequence is going to be sufficient. She had two years of a three-year supervised release, so. Is there, is there a case that says that on, that's on direct appeal, or are those all habeas cases, and does it matter? Those are all, those are, those are primarily habeas cases. Sure. And does it matter? Does it matter? I mean, if it's on direct appeal, are we supposed to consider collateral consequences if the direct appeal is mooted out? I don't know. I don't know the answer. I don't know the answer to that either. I've looked at a lot of cases. On the merits, what would you like to tell us? Anything? Well, on the merits, I have to tell the Court that I've, I think Booker's created a real quagmire, and I'm not sure how to resolve it in terms of the Amlin case. On the merits of this case, I believe that, that the case, for example, Cosby, which Amlin looked at, the same day there was a case called Fleming that was decided by the same circuit, Circuit, the Second Circuit, and that was a supervised release violation, but it was on a 3553, excuse me, a 3583 issue, not a concurrent consecutive. Well, are you arguing there has to be some kind of a jury finding in connection with supervised release? No. I'm not, I'm not arguing that at all. What I'm arguing is, what the position is, is that if other factors can now be considered if the guidelines are advisory, then every defendant who comes before the district court for sentencing is entitled to take advantage of whatever factors those may be. But policy statements are advisory anyway. Anyway. Well, but that's not, that's not really what the statute says. 3553A says, 4 and 5 say, you look at these policy statements, but we're still, we're still asking you, and you have to look at them. And I don't agree, I don't agree that whether they're, whether they're, I don't agree. We have a standing, almost a standing presumption that the district court follows the law. And what you're asking is that they have to prove that they've considered these 3553A factors. The district court included several factors. Jackson only had one, and we said it was okay, because we know the district judges looked at it. How would you distinguish Jackson? That's, to me, that's not really the issue. The issue is what's missing from the record, not what's included in the record. In other words, when you're, when the court is considering discretionarily whether it's going to, whether it's going to impose a consecutive or concurrent time, then what factors can the defendant effectively present to the court that would mitigate in terms of his imposing a concurrent or consecutive sentence? That's, that's really the issue. That's what I read from Booker is that we, that they can do. They can, so, so basically a case that just says, well, the courts looked at the guidelines and considered the, the policy statements isn't enough if he doesn't look at the flipside. Are you on your Booker argument now? Yes. No, I'm not. No, I'm not. I'm just. I think Justice Breyer took care of that one. But how would you distinguish Jackson? There, there was sufficient that they mentioned one of the factors. We knew that they looked at him and considered him. We said it's fine. Here, the Court mentioned several factors. Why would we, under Jackson, why would we reverse the district judge? Well, I, I think Jackson is a, is a, is a pre, preambling decision, is it not? So what do you, what do you think has to be done that wasn't done? Well, that's, what I think has to be done is if, if this fellow were to be arrested and, and he's pending sentencing again, what has to be done is the court has to give this defendant, whether it be my client or any defendant, the opportunity to bring in factors that are, because the guidelines are advisory, he can now look at and determining that concurrent or consecutive sentence. Okay. So, so unnamed, unknown factors have to be put in the equation. Absolutely. What are they here? Well, we don't know because they weren't available. That's the whole point of my brief. We don't know because, because the defendant couldn't present those factors under a mandatory scheme of sentencing. Now it's like the court can actually take anything it wants into consideration or not. That's the way it appears to be. So it's not enough to just say the judge considered, you know, the, the guidelines and the, and the policy statements. I, that's my position that as long as they continue to do that, that, that, that violates what, what, what they're supposed to be doing is looking at, suppose this guy had a, I don't know, some mother in a wheelchair and, and, and, and, and, you know, he was so poverty stricken he couldn't do anything for his mother in a wheelchair in Mexico. Well, under the old scheme, that's not even, that's not a consideration. Under 5H, now it should be. And if it's not, and if that doesn't happen, then, then a defendant, then a record is silent as to the half of the, of the equation that the defendant, that the defendant can present to that court. That's essentially it. Okay. Thank you. Thank you. Mr. Ferg. May it please the Court. My name is Bruce Ferg, assistant United States attorney. Briefly, I think the word or term that you were groping for, Judge Reimer, was fugitive disentitlement. And the reason why I, I can't rely on that in this case is exactly what Judge Trott indicated. I understand that. I, I was just kind of reaching around for analogous situations and, and what we, we do in it. And I think in that situation, isn't the case just sort of dismissed and then it can be subject to revival? I can't remember to tell you. I just thought maybe you could. In actual disentitlement case, he has forfeited or waived his right. To appeal. And it's gone. And it's gone. And it's gone. Okay. Well, that's not helpful. No. But there is a part that Judge, Judge Reimer points out, and it's the case that, that, that was Judge Reinhart's case, Cantrell, which recited to you, as long as effective relief may still be available to counteract the effects of the violation, the controversy remains live and present. And I think Judge Reimer is pointing out that what is the effective relief you can give? That is, there must be some effective relief available to counteract the effects of the, of the violation. And so we're sort of dealing with what are those? Are, can we just wait and see if anything happens at the end of two years? Can we go back and change the, ask the district judge to make it concurrent and, therefore, somehow that would change how the supervised release will go forward? Where are we to do that? What is our effective relief? Well, our position is that there is not any effective relief that you can grant in this case. And the reason for that is. If we went back, suppose we said that it should have been concurrent. Just assume that. So it's concurrent. And we, we reverse the district judge and say it should be concurrent. So the judge will enter an order saying that it's going to be concurrent. Then does somebody else say that the, that the, the supervised release starts one year earlier than we thought it was starting? What, what happens technically? Well, I guess that might be a question depending on whether he comes within the, the one year of hypothetical extra time or not. But the problem is that what we're dealing with is this case. And it's only the sentence in the supervised release that was ever appealed. So the underlying case, or the new offense really, is not even before the court. And I think that brings us within a case that I found trying to follow up on your, your letter. United States versus Palomba, P-A-L-O-M-B-A, which is at 182 F3rd 1121. And what Palomba explained was that before the Supreme Court and Spencer versus Chemna got into the picture, this court had a doctrine of collateral circumstances or collateral consequences. So that even if someone had served his prison time, he would still be entitled to maintain an appeal and have that issue dealt with based on those collateral consequences. But when Spencer came down, it changed that whole area of the law. And so Palomba, this court says that based on that it's no longer an issue of those kinds of collateral consequences that may or may not ever eventuate. The question is, is there something in the existing case which continues to give this court jurisdiction, which is true in the supervised release area where there is that kind of a tail, because that's still kind of a form of custody, good even like for habeas and whatever. But in this case, we don't have that. He served all of his prison time.  And so there is a footnote three to the Palomba case, which is about as directly in point as I can give it to you. And this is again at page 1123 of the opinion. Although there is no standing to challenge an improper but completed sentence, when only the length of the sentencing is at issue, there is a presumption of collateral consequences sufficient for standing. And so the question is, is there something in the existing case which continues   but only the length of the sentencing is at issue, and there is no standing to challenge an improper but completed sentence, when only the length of the sentencing is at issue. Has his period of supervised release about which we're talking expired? The supervised release that was imposed as part of the sentence for the new offense has not, no. But that's a different case. And that's not what I asked. Yeah. No, it is. The supervised release about which we are talking in this case. There is none in this case. It's gone. Right. Okay. He was revoked. He was given the consecutive term of 12 months, and that's over. So there's nothing we can do. Essentially, yes. I really think that there is no, simply no jurisdiction, that it is moot under Palumba and Spencer v. Kemner, because although there may be some hypothetical or possible collateral consequences. Those don't count, I think. Right. So I can speak, if you want me to, to the merits, but I don't think it's useful for you to get there, because I really believe that this Court simply does not have the jurisdiction over this totally expired sentence. Do you have any merits questions? Anybody have questions? I have one other question, and that's on standard review. In your issues, the government uses the term ERD, which is de novo. But at page 9 of your brief, you use plain error. And I've, it strikes me that this should be plain error, because it was not objected to, but the government has been inconsistent on a standard review. Could you advise us what you think the standard review should be in this case? Let's see. Page 9. You said I spoke of error. Well, I see I'm saying that this Court did not err in imposing a consecutive sentence. Perhaps I should, and I say that it should have been reviewed only for plain error. That's what you say, and it strikes me as correct. But in your issues, you say whether the district court erred when it imposed a consecutive sentence. That's not plain error. That's de novo. And I'm just wondering which one of the two standards. Well, it's definitely plain error, because it was not raised below. And so to the extent that's inconsistent, it was inartfully put. But certainly it was not an intent to. Do you accept the plain error standard? Absolutely. All right. Thank you, counsel. The matter just argued will be submitted. And we appreciate your showing up and helping us out. Thank you. We'll now hear argument in Wasco.
judges: Wallace, Trott, Rymer